30440. HALL *v.* BROWNING.

DECIDED NOVEMBER 16, 1944. REHEARING DENIED DECEMBER 12, 1944.

*W. B. Kent, W. A. Dampier, M. H. Blackshear,* for plaintiff in error.

*R. I. Stephens, Lester F. Watson,* contra.

MacINTYRE, J. ▇ In special grounds 4, 5, and 6, the plaintiff in error, J. M. Hall, raises the question as to whether he could waive a preliminary trial or hearing on a peace warrant procured in the magistrate's court. On October 22, 1942, U. L. Browning, the defendant in error, made an affidavit before W. H. White, J. P., that he was in fear of death or some bodily harm to be done,

or procured to be done, to him by J. M. Hall. On the same day precept was issued and the plaintiff in error, J. M. Hall, was arrested and brought before the magistrate, at which time the following order was issued: "The defendant [J. M. Hall] herein named having been arrested and brought before me, and he having waived hearing on said warrant; it is ordered that he give bond in the sum of $500 to keep the peace against U. L. Browning, his family and property." (Brackets ours). Hall then executed a peace bond. On the trial in the instant case, a suit on the bond, there was no demurrer, and no objection to any of the evidence. The evidence authorized a finding that the plaintiff in error voluntarily waived a preliminary trial or hearing and was thereupon ordered by the magistrate to give a $500 peace bond. The plaintiff in error contends that the act approved February 21, 1850 (Ga. L. 1849-50, p. 333), although it does not appear in the Code of 1863, nor in any of the subsequent Codes, is of full force and effect. This act reads as follows: "An act to regulate the action of magistrates upon peace warrants. Whereas it is the practice of justices of the peace to grant peace warrants upon an affidavit being made according to law, and of binding or committing the accused party without a hearing, which is contrary to justice—for remedy whereof: Section 1. *Be it enacted by the Senate and House of Representatives of the State of Georgia in General Assembly met, and it is hereby enacted by the authority of the same,* that hereafter when peace warrants are granted upon such principles as the law now prescribes, that after the party is arrested and brought before the magistrate or committing officer, the party in arrest shall be permitted to introduce testimony in order to show there is no just ground for the warrant." Even if it is of full force and effect, we think, nevertheless, that the defendant in a peace-bond proceeding could waive his right to a preliminary trial or hearing, and when ordered to give a bond to keep the peace and did so, the bond would be of as full force and effect as if the order were based upon evidence at a preliminary trial. If a defendant in a murder case can waive arraignment and trial by jury and plead guilty, and a judgment, in the nature of a sentence, can be entered upon such waivers and plea without the introduction of any evidence, we see no reason why the plaintiff in error could not waive his right to a preliminary hearing before a justice of the peace in a peace-warrant proceeding. We do not think that

the contentions in special grounds 4, 5, and 6, based upon the theory that the plaintiff in error could not waive the preliminary hearing in a peace-bond proceeding for the reason that "he could not waive the performance of duty on the part of the State's officer," are meritorious.

■ The exception in special ground 1 is, "That the verdict and judgment against defendant are void and should be set aside for the reason that the bond, which is the instrument on which plaintiff's action is founded, is void and unenforceable for the reason that it is made payable to the Governor of the State and not to U. L. Browning, the affiant plaintiff, and for the further reason that said bond places no duty or obligation on J. M. Hall, but only on James Bracewell to keep the peace against U. L. Browning." The peace bond, the instrument upon which the defendant in error's action is based, was in the following language, to wit: "We, J. M. Hall, as principal, and James Bracewell, as security, agree jointly and severally to pay to Hon. Eugene Talmadge, Governor of Georgia, and his successors in office, $500, upon condition that said J. M. Bracewell fails to keep the peace as against U. L. Browning, his family, and property." The bond was introduced in evidence without objection and the exception taken in special ground 1 was made for the first time in the motion for a new trial. In *Levar* v. *State,* 103 *Ga.* 42, 44 (29 S. E. 467), in discussing peace-warrant proceedings, the court said: "It would seem that cases of this kind were dealt with as being either criminal or quasi-criminal proceedings." And it was further said that, under the acts of the legislature and the various Codes, there were continuing intimations that "peace bonds were to be returned to and finally acted upon by the superior courts, and that cases of this kind will be treated as criminal cases." Criminal bonds are payable to the Governor. We do not recall that the point has ever been made that a peace bond should be made payable to the party at whose instance the bond is required, and the only precedents that we have in mind are physical ones, such as in *Shirley* v. *Terrell,* 134 *Ga.* 61 (67 S. E. 436). Physical precedents, in so far as we are aware, are all to the effect that the bond is a criminal bond and should be made payable to the Governor, and that the suit may be brought by the party at whose instance bond was required as the plaintiff substituting the name of the Governor suing for the use of the plaintiff. *Jones* v. *Reed,* 58 *Ga. App.* 72 (197

S. E. 665); Code, § 81-1307. This procedure was followed in the instant case. In *Shaver* v. *McLendon, 26 Ga. 228,* it was said: "By mistake, a forthcoming bond was made payable to *James* B. Shaver instead of to *Wm.* B. Shaver. *Held,* that Wm. B. Shaver might sue at law on the bond, and show the mistake there." And in *Atlanta & West Point Railroad* v. *Speer, 32 Ga.* 550 (79 Am. D. 305), it was stated that, "where the intention of the parties to a contract is sufficiently apparent to be recognized in any court, the fact that a word is omitted is no sufficient reason for bringing a party into a court of equity for a reformation of the contract." The mistake in the bond here sued upon was merely "a lapsus pennae." "The cardinal rule of construction is to ascertain the intention of the parties." Code, § 20-702. And another rule of construction is that "the construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part." *Gaulding* v. *Baker, 9 Ga. App.* 578, 580 (71 S. E. 1018). With these rules of construction in mind, and considering the peace bond in its entirety, together with the whole surrounding circumstances, including the affidavit, the precept to arrest and bring the plaintiff in error before the magistrate, and the commitment on the peace warrant, all showing that J. M. Hall, the plaintiff in error, was the person against whom the peace warrant was issued, it is manifest that the insertion of the name of J. M. Bracewell, the surety on the bond, at the place in question where that of J. M. Hall should have been was an unintentional clerical error of the scrivener, and that the name of J. M. Hall was intended to be inserted in that place. The mistake does not change any of the terms of the bond or the subject-matter thereof, but is simply an unintentional substitution of the name of J. M. Bracewell for that of J. M. Hall in one place in the bond where the name of Hall should have been inserted, and this clerical error should not be permitted to defeat the clear intention of the parties. *Tillman* v. *Webb,* 17 *Ga. App.* 620 (87 S. E. 904); *Gaulding* v. *Baker,* supra. See in this connection *Lewis* v. *State, 55 Ga. App.* 743 (3) (191 S. E. 278). In the absence of any objection to the introduction of the bond in evidence, and the error being so manifestly a clerical one, even parol evidence was unnecessary to prove that fact, in order to introduce the bond in evidence. The bond

here in question is not void and unenforceable, and special ground 1 is not meritorious.

■   The defendant, in special grounds 2 and 3, contends "that the verdict and judgment are based upon a void and unenforceable instrument; that the bond in the case was not a finished and completed obligation because it had not been returned to the next term of the superior court after it had been taken, and until this had been done and the affidavit and bond had been considered in the light of the evidence produced in support thereof, it was only part of a pending proceeding, was subject to be disapproved and canceled by the judge of the superior court, and was therefore not a matured and finished obligation and not yet ripe for suit to be brought thereon." The peace bond is analogous to a bail bond or recognizance in a criminal case, where the defendant has been bound over by a justice of the peace at a commitment trial and required to give a bail bond or recognizance for his subsequent appearance in the superior court. Such a recognizance in a criminal case may be forfeited and judgment obtained for a failure to appear before the case is tried and while the criminal case is still pending in the superior court. Whether the defendant is convicted or acquitted at the subsequent trial of the case does not affect the judgment obtained on the criminal appearance bond or recognizance. The question presented on a suit on the bond is, did he violate the condition of a valid bond? Not whether the justice of the peace's judgment in binding him over was correct; nor what was the subsequent judgment of the superior court as to whether he was guilty or innocent. "A peace-warrant case is never finally disposed of by the magistrate, but it is still his duty to return all of the papers to the superior court, where they remain on file for final action by the judge of that court." *Levar* v. *State,* 103 *Ga.* 42, 46, supra. And the Code, § 76-204, provides: "The superior court may, at any time, discharge the bond, unless there shall be a motion to extend it, accompanied by evidence to satisfy the court of the necessity of such extension." The bond here sued on was introduced in evidence without objection. The record in the case is silent as to when, if at all, the papers in the peace-bond proceedings before the magistrate were returned to the superior court, which was the same superior court in which the suit on the bond was being tried, and whether they were on file there at the time of the filing or trial of this suit. Neither was there any

point raised during the trial that they were not of file in the superior court, nor was any objection made to the introduction of the bond in evidence on this or any other ground. Thus a failure to make such objection will be treated as a waiver, and prevent the court on motion for a new trial from inquiring as to the competency of the evidence. *Andrews* v. *State,* supra. In Black's Law Dictionary (3d ed.) p. 802, it is stated: A forfeiture of a bond is "a failure to perform the condition on which the obligor was to be excused from the penalty in the bond." If the peace-bond proceedings here were returned to the superior court before the next term thereof, and were on file there, and the defendant forfeited the recognizance, that is, if he failed to perform the conditions upon which he, as obligor, was to be excused from the penalty of the bond by his failure to keep the peace, the forfeited recognizance could be extracted from the record and, as in the instant case, the obligor and the surety sued on the bond in the superior court. *Shirley* v. *Terrell,* supra. This procedure is somewhat analogous to that followed in suits on criminal appearance bonds when the bond is forfeited by the defendant and the State is allowed to extract it from the record in the criminal case and file a suit thereon. But even if we assume that the court took judicial cognizance that the next superior court did not convene until the fourth Monday in January, 1943, and the record showed that the suit was filed on the third day of December, 1942, where there was no objection to the introduction of the bond on the ground that it had not, before the filing of the suit, been properly returned to or acted on by the superior court, which in the instant case was the same court in which the suit on the bond was being tried, we still do not think that the introduction of the bond without objection would be a ground for a new trial. *Andrews* .v. *State,* supra; *Patton* v. *Bank of LaFayette,* 124 *Ga.* 965, 973, 974 (53 S. E. 664, 5 L. R. A. (N. S.) 592, 4 Ann. Cas. 639). Every presumption and inference is in favor of the verdict. See in this connection, *Beckworth* v. *State,* 60 *Ga. App.* 688, 689 ' (4 S. E. 2d, 707) ; *Rumph* v. *State,* 60 *Ga. App.* 689, 690 (2) (4 S. E. 2d, 673).

■ The exceptions in special ground 7 are controlled adversely to the plaintiff in error by the rulings in the three preceding divisions of this opinion.

■ The evidence authorized the verdict.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*